UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| REBECCA RICCIUTI, : | |
|       Plaintiff, : | |
| : | |
| v. : | No. 3:09cv826 (MRK) |
| : | |
| GARRY GYZENIS, : | |
| EMILE GEISENHEIMER, : | |
| DAVID SMITH, : | |
| LAWRENCE MOON, : | |
| EDWARD KRITZMAN, : | |
| ROBERT NOLAN, and : | |
| TOWN OF MADISON, : | |
|       Defendants. : | |

## RULING AND ORDER

On December 28, 2011, the Court denied the Defendants' Motion for Summary Judgment [doc. # 49] because of the many material facts still in dispute in this First Amendment retaliation case. (Readers eager to learn more about those facts can find them in the Court's previous Memorandum of Decision [doc. # 65]. *See Ricciuti v. Gyzenis*, --- F. Supp. 2d. ----, 2011 WL 6816542 (D. Conn. Dec. 28, 2011).)

Defendants have now asked the Court to reconsider its summary judgment decision for three reasons: the Court, they claim, (1) relied on inadmissible evidence, (2) found a dispute where none exists, and, perhaps as a result, (3) mistakenly denied the individual Defendants qualified immunity. After carefully considering Defendants' arguments, the Court still does not see the "clear error," *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992), of its ways. Thus, for reasons explained more fully below, the Court DENIES Defendants' Motion for Reconsideration [doc. # 66].

1

I.

The standard for granting a motion for reconsideration is strict. *See Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995); *see also Archibald v. City of Hartford*, 274 F.R.D. 371, 382 (D. Conn. 2011). Local Rule 7(c) directs parties seeking reconsideration to "set[] forth concisely the matters or controlling decisions which counsel believes the Court overlooked in the initial decision or order." D. Conn. Loc. Civ. R. 7(c). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways*, 956 F.2d at 1255 (quotation marks omitted). A "motion to reconsider should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*, 70 F.3d at 257.

Defendants do not offer newly discovered evidence or any recent developments in controlling law. Thus, their motion is apparently based on a perceived "need to correct a clear error," *Virgin Atl. Airways*, 956 F.2d at 1255—or, in this case, three clear errors—in the Court's previous opinion.


II.

A.

Defendants first claim that the affidavits of Michael Lewis and Walter Lippmann, on which the Court occasionally relied in its decision, fail to comply with Rule 56(c) of the *Federal Rules of Civil Procedure*. Rule 56(c) requires that affidavits used to oppose summary judgment "be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In its earlier opinion, the Court twice cited a paragraph of Mr. Lewis's affidavit that reads as follows: "All of the information that Ricciuti presented in the matrix was public information.

2

Past schedules of supervising officers and staffing levels are easily accessible by an FOI request. She did not publish any future schedules." Mem. in Opp. [doc. # 58] Ex. 16 (Lewis Aff.), ¶ 21. In support of his competency to testify on these matters, Mr. Lewis listed his past and present work at the Shelton Police Department, his fifteen years as union president there, and his service as Ms. Ricciuti's labor representative in Madison. Through his work with Ms. Ricciuti, Mr. Lewis was certainly competent to testify regarding the information she disclosed in the matrix—the document that Ms. Ricciuti thinks led to her termination—especially whether it contained future schedules. Further, to call certain information "public" is not necessarily to make a legal conclusion; it could just as easily be interpreted as a statement of fact regarding what information was actually out in public. In any event, Mr. Lewis's testimony that the information in the matrix was public was no more conclusory than that of Scott Pardales, on whose deposition testimony Defendants base their claim that the matrix *did* contain confidential information. *See* Defs.' Statement of Material Facts [doc. # 49-2] ¶ 53. Viewing the evidence in the light most favorable to Ms. Ricciuti—as the Court is required to do at summary judgment, *see Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008)—the Court found and finds still that enough of Mr. Lewis's testimony was admissible that it, along with other evidence cited, *see* Mem. in Opp. [doc. # 58-10] Ex. 9 (Ricciuti Interview Tr.) at 23, 52, 54, supported the claim that "[t]here is a dispute in the record as to whether the information in the matrix was confidential or publically accessible." *Ricciuti*, 2011 WL 6816542 at *2; *see also id.* at *12.

The Court also cited an affidavit by Walter Lippman, a retired police officer who, like Ms. Ricciuti, was concerned with overtime and spending at the Madison Police Department. It did so for the proposition that several of Ms. Ricciuti's ideas were implemented by the Town of Madison after her termination. *See id.* at *13. While the Court agrees with the Defendants that

more factual details could have been added to Mr. Lippman's affidavit to support his claims, Mr. Lippman's backround as a police officer, his long residency in Madison, his demonstrated interest in the operations of the Madison Police Department and its Police Commission, and his familiarity with Ms. Ricciuti's matrix together make him qualified to testify about publically accessible information such as spending and hiring at the Department.

Defendants are clearly eager to contest the factual claims made by Mr. Lewis and Mr. Lippman, among others. This is best done, however, at trial—not in motions for summary judgment or reconsideration.

### B.

Defendants' second claim is that it is beyond dispute that Ms. Ricciuti used confidential information in her matrix. Defendants argue that the Court must not have taken note of an admission in Ms. Ricciuti's Local Rule 56(a)(2) Statement [doc. # 58-1], where she acknowledges her reliance upon "a clipboard chart posted in Sergeant Pardo's office, to which only MPD personnel had access, which listed patrol and supervisory shift vacancies going forward." Defs.' Statement of Material Facts [doc. # 49-2] ¶ 50.

The Court did not miss this admission; it simply found that the admission fails to prove what Defendants think it does: that confidential information must have gone into the matrix. Read precisely, the fact admitted is that Ms. Ricciuti relied on information posted in a non-public place. But this, of course, says nothing about whether the information itself was either public or confidential. In preparing the present Ruling, for example, the Court relied on copies of the Parties' briefs stacked on a desk in chambers. The briefs themselves are fully public; their location is not.

In any event, the matrix is part of the record in this case, so the question of what information was *disclosed* there—as opposed to what information was used in preparing it—is best determined by looking at the document itself. Having done so, the Court is puzzled as to what confidential information it reveals. Mr. Lewis, in his contested affidavit, testified that Ms. Ricciuti did not publish any future schedules. The copy of the matrix in the record bears this out. Defendants respond that this "merely demonstrates a misunderstanding on Mr. Lewis' part as to the predictive nature" of the *past* schedules included in the matrix. Mot. for Reconsideration [doc. # 66] at 4. The problem, it seems, is not that Ms. Ricciuti disclosed confidential information, but that she disclosed public information from which confidential information might be inferred. This differs markedly from Defendants' claim that "it is not disputed that Plaintiff included in the 'matrix' information that was confidential." Mot. for Reconsideration [doc. # 66] at 7. Whether the information included in the matrix actually violated Madison Police Department policies or disrupted the Department's operation—and, more importantly, whether this violation or disruption is what led to Ms. Ricciuti's termination—are questions the jury will need to decide at trial.

C.

Finally, the individual Defendants seek to relitigate the question of qualified immunity. The Court sees no need to do so, since the issue of qualified immunity in this case is so inextricably tied to the disputed facts. On one possible version of those facts, Ms. Ricciuti used publically accessible information to show the taxpaying public that her superiors at the Madison Police Department were manipulating overtime schedules in order to pad their pensions. Ms. Ricciuti was then fired in retaliation for speaking out on this matter of public importance. If this is the account credited by the jury, it is unquestionably the case that clearly established law in

5

2009 would have prohibited the Defendants' course of conduct. Thus, Defendants' request for qualified immunity could only be granted were the jury to find the facts to be otherwise. The Court cannot do this itself.

The Court will pause to clarify two points of confusion, however. First, the fact that the Second Circuit currently offers two different tests for qualified immunity, *see Ricciuti*, 2011 WL 6816542 at *14 n.2, is a source of concern, but not one that affected the Court's decision in this case. *Cf.* Mot. for Reconsideration [doc. # 66] at 11-12. The third part of the three-part test sometimes employed by the Second Circuit can only be answered if there is "no dispute as to the material historical facts." *Taravella v. Town of Wolcott*, 599 F. 129, 135 (2d Cir. 2010). Since that is not the case here, the Court did not arbitrarily choose one line of Second Circuit precedent over another; instead, it used the only one which applied. *Compare* Mot. for Reconsideration [doc. # 66] at 12, *with Ricciuti*, 2011 WL 6816542 at *14 n.2.

Second, because the facts in this case are so thoroughly disputed, qualified immunity here does not hinge on admittedly difficult questions about whether *Garcetti v. Ceballos*, 547 U.S. 410 (2006), narrowed employee protections or whether *Weintraub v. Board of Education*, 593 F.3d 196 (2d Cir. 2010), or *Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011), either narrowed or clarified those protections further. *Cf.* Mot. for Reconsideration [doc. # 66] at 12-14. As the Court already noted, there is at least one account of the facts in this case on which Ms. Ricciuti's speech would be clearly protected from retaliation under *all* of these cases. In this, the present case differs from *Barclay v. Michalsky*, which Defendants cite, and in which the plaintiff was indisputably "required as part of her professional responsibility" to speak as she did—thereby running headlong into *Garcetti*. 493 F. Supp. 2d 269, 277 (D. Conn. 2007); *cf. Garcetti*, 547 U.S. at 421 ("[W]hen public employees make statements pursuant to their official duties, the

6

employees are not speaking as citizens for First Amendment purposes."). In *Barclay*, the court found no evidence that the plaintiff had gone, or even threatened to go, public with her complaints. *See Barclay*, 493 F. Supp. 2d at 276. Here, in distinction not just to *Barclay* but also to *Garcetti* and *Weintraub*, Plaintiff's communication with the public is one of the few facts on which both sides agree. Although a jury will need to decide whether this communication was more disruptive than valuable, the law has been clearly established since 1968 that this is the relevant question to ask. *See Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).

### III.

Each of these issues was ably argued by the Parties in their previous briefs and oral argument. They do not need to be litigated again. The Defendants' Motion for Reconsideration [doc. # 66] is therefore DENIED. The Parties are instructed to file their Joint Trial Memorandum no later than February 23, 2012. This case will be considered trial ready at that time.

**IT IS SO ORDERED.**

  /s/  Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: January 24, 2012.**